[Cite as *State v. Riley*, 2013-Ohio-1332.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Sheila G. Farmer, J. |
| -vs- | : | |
| | : | Case No. CT2012-0022 |
| BLAKE A. RILEY | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Muskingum County Court
of Common Pleas, Case No. CR2011-0122


JUDGMENT:     AFFIRMED


DATE OF JUDGMENT ENTRY:     March 22, 2013


APPEARANCES:

For Appellant:                              For Appellee:

ELIZABETH N. GABA                   D. MICHAEL HADDOX
1231 East Broad Street               MUSKINGUM CO. PROSECUTOR
Columbus, OH 43205                   RON WELCH
                                                  27 N. 5th Street, Suite 201
                                                  Zanesville, OH 43702-0189

*Delaney, P.J.*

{¶1} Appellant Blake A. Riley appeals from the March 16, 2012 judgment entry of conviction and sentence of the Muskingum County Court of Common Pleas. Appellee is the state of Ohio.

*FACTS AND PROCEDURAL HISTORY*

{¶2} Appellant is the former boyfriend of Ashley Orndorff, the granddaughter of Larry and Becky Orndorff. Appellant was aware the Orndorffs generously supported Ashley. They had cash on hand in their home which was available to Ashley anytime. Appellant knew where the Orndorffs kept their cash and knew the home was usually unlocked. He also knew the Orndorffs had many firearms in their home.

{¶3} This case arose in the late-night hours of December 12, 2008 when intruders broke into the home of Larry and Becky Orndorff while the Orndorffs were sleeping and stole cash and property.

{¶4} The intruders decided to return in the early morning hours of December 13, 2008, and this time awakened Larry Orndorff. Both Orndorffs were held at gunpoint and their home was ransacked; they were forced to turn over cash, firearms, medication, and other property. The Orndorffs believed there were two intruders in their home during the robbery, and Becky Orndorff heard one place a phone call instructing someone to come pick them up and to "pop the trunk." Although most of the telephones in the house had been disabled, Becky Orndorff was able to call 911 at 1:59 a.m.

{¶5} The Orndorffs did not get a good look at the intruders. Becky was aware that the one who led her to the garage at gunpoint had blue eyes and was taller than her husband, and of slender build, but he was wearing a ski mask or other type of head covering, black clothing, and gloves. Investigators were not able to find any useful fingerprints and did find marks in dust that confirmed the intruders wore gloves during the robbery.

{¶6} The Muskingum County Sheriff's Office immediately focused on the phone call that had been placed during the robbery. They narrowed down the cell phone towers that picked up calls from the Orndorffs' residence. Next they narrowed down calls within twenty minutes of Becky Orndorff's 911 call, which were likely to be the intruders calling their getaway driver. Eventually this investigative work led to a list of six telephone numbers. Those telephone numbers led to interviews with several individuals including appellant, Ryan Barlow, and Jamie Hutton, among others. All denied their involvement in the home invasion.

{¶7} The investigation yielded few leads until a woman named Keela Davis came forward in 2010 and told her mother that appellant, Ryan Barlow, and Jamie Hutton were the three who had perpetrated the Orndorff home invasion. A fourth individual, Brittany Funk, was the getaway driver. Law enforcement interviewed Barlow, Hutton, and Funk and developed additional leads to confirm their suspicion of appellant's involvement.

{¶8} Appellant was initially charged as a juvenile and bound over to the Muskingum County Court of Common Pleas. After indictment and before the start of trial, the State dismissed two aggravated robbery charges and amended others with

the result that appellant stood trial upon one count of aggravated burglary [R.C. 2911.11(A)(2)], theft of a firearm [R.C. 2913.02(A)(1)], theft in an amount greater than $1000 and less than $7500 [R.C. 2913.02(A)(1)], aggravated burglary [R.C. 2911.11(A)(2)] with a firearm specification [R.C. 2941.145], two counts of kidnapping [R.C. 2905.01(A)(2)] with a firearm specification [R.C. 2941.145], one count of theft of firearms [R.C. 2913.02(A)(1)], and one count of theft in an amount greater than $7500 and less than $150,000 [R.C. 2913.02(A)(1)].

{¶9} The State's evidence at trial included the testimony of the Orndorffs and the investigators. Ryan Barlow and Jamie Hutton, appellant's accomplices, also testified, as did Brittany Funk. A former girlfriend of appellant's testified he admitted his involvement in the home invasion to her when she asked him about it, and said Jamie Hutton forced him into it.

{¶10} Appellant presented a number of alibi witnesses who claimed the night of the robbery he was present at a performance by his sibling "Claudia" in Columbus, Ohio. The State presented some evidence to indicate this show was performed a different weekend than the one in question.

{¶11} Appellant moved for judgment of acquittal pursuant to Crim.R. 29(A) at the close of appellee's evidence and at the close of all of the evidence; the motions were overruled. Appellant was found guilty as charged. The trial court determined that a number of the counts and firearm specifications merged,[1] and sentenced appellant to an aggregate prison term of 23 years.

---

[1] Counts two and three (two counts of theft) merged with count one (aggravated burglary); Counts seven and eight (theft) merged with count four (aggravated burglary); the firearm specifications merge and appellant was sentenced on only one.

{¶12} Appellant now appeals from the judgment entry of his conviction and sentence.

{¶13} Appellant raises seven Assignments of Error:

{¶14} "I.    THE TRIAL COURT COMMITTED PLAIN ERROR IN ITS INSTRUCTION TO THE JURY IN 1) FAILING TO GIVE THE JURY THE REQUIRED CAUTIONARY INSTRUCTION REGARDING THE TESTIMONY OF AN ALLEGED ACCOMPLICE UNDER R.C. 2923.03(D) AS TO THE TESTIMONY OF RYAN BARLOW AND JAMIE HUTTON; AND 2) FAILING TO IDENTIFY BRITTANY FUNK AS A THIRD POTENTIAL ACCOMPLICE IN A CAUTIONARY INSTRUCTION."

{¶15} "II. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT SENTENCED APPELLANT TO CONSECUTIVE SENTENCES ON COUNTS 4, 5, AND 6 OF THE INDICTMENT IN VIOLATION OF R.C. 2941.25—ALLIED OFFENSES OF SIMILAR IMPORT—AND THE DOUBLE JEOPARDY CLAUSES OF THE OHIO AND UNITED STATES CONSTITUTIONS."

{¶16} "III.   THE TRIAL COURT ERRED AS A MATTER OF LAW, TO THE PREJUDICE OF APPELLANT, BY CONVICTING APPELLANT, BECAUSE THIS CONVICTION WAS BOTH AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE CONVICTION."

{¶17} "IV.   THE COURT OF COMMON PLEAS DID NOT HAVE SUBJECT MATTER JURISDICTION OVER THE CRIMINAL TRIAL BECAUSE BLAKE RILEY WAS UNDER EIGHTEEN YEARS OLD AT THE TIME OF THE ALLEGED OFFENSE AND WAS NOT PROPERLY BOUND OVER FROM THE JUVENILE COURT."

{¶18} "V.  DEFENDANT'S JUVENILE COURT BINDOVER TO ADULT COURT VIOLATED THE PRINCIPLES SET FORTH IN APPRENDI V. NEW JERSEY 530 U.S. 466 (2000), AND THUS VIOLATED HIS RIGHTS TO DUE PROCESS AND TO A JURY TRIAL."

{¶19} "VI.   THE COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT FAILED TO RECORD ALL THE PROCEEDINGS IN THIS CASE."

{¶20} "VII.  APPELLANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL DUE TO NUMEROUS ERRORS AND OMISSIONS WHICH PREJUDICED APPELLANT'S TRIAL."

I.

{¶21} Appellant argues in his first assignment of error the trial court erred in its jury instructions with respect to accomplice testimony.  We disagree.

{¶22} Ohio Revised Code Section 2923.03(D) provides:

> If an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with complicity in the commission of or an attempt to commit an offense, an attempt to commit an offense, or an offense, the court, when it charges the jury, shall state substantially the following:
>
> "The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.

"It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth."

{¶23} In this case, no instruction on accomplice testimony was given. Appellant's trial counsel did not request an instruction nor object to the instructions as given, and appellant concedes he has therefore waived all but plain error. Pursuant to Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The rule places several limitations on a reviewing court's determination to correct an error despite the absence of timely objection at trial: (1) "there must be an error, i.e., a deviation from a legal rule," (2) "the error must be plain," that is, an error that constitutes "an 'obvious' defect in the trial proceedings," and (3) the error must have affected "substantial rights" such that "the trial court's error must have affected the outcome of the trial." *State v. Dunn*, 5th Dist. No. 2008-CA-00137, 2009-Ohio-1688, citing *State v. Morales*, 10 Dist. Nos. 03-AP-318, 03-AP-319, 2004-Ohio-3391, at ¶ 19 (citation omitted). The decision to correct a plain error is discretionary and should be made "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Barnes*, supra, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶24} In determining whether the trial court committed plain error by failing to give the jury an accomplice instruction under R.C. 2923.03, an appellate court generally examines several specific factors. *See, State v. Simpson,* 9th Dist. No. 25363, 2011–Ohio–2771, ¶ 19. In *State v. Davis*, the Ninth District Court of Appeals

articulated a number of factors to review when the trial court fails to give an instruction on accomplice testimony in the absence of a request to do so.

> When determining whether the trial court committed plain error by failing to comply with R.C. 2923.03(D), this Court examines several factors. We look to the record to determine the scope of cross-examination of the accomplice that was permitted by the trial court.* * * Further, we review whether the details of the accomplice's plea agreement were presented to the jury and whether the jury instructions that were actually given contain much of the substance of the instructions mandated by R.C. 2923.03(D). Finally, we examine whether the accomplice's testimony was favorable to the defendant, justifying defense counsel's failure to request the required instruction as a tactical decision. * * *. [Internal citations omitted].
>
> *State v. Davis,* Ninth Dist. No. 22395, 2005-Ohio-4083, ¶ 16.

{¶25} We find no plain error with regard to the testimony of Barlow and Hutton. The scope of cross examination of both was extensive and without constraint by the trial court. The jury was told the lengths of their sentences due to their involvement in this crime. The jury instructions, as in *Davis,* contained only the standard language about witness credibility. Barlow and Hutton's testimony was also unfavorable to appellant: both put him squarely in the midst of both aggravated robberies, suggesting

the locale, in the residence, holding a shotgun to the Orndorffs and carrying out firearms and other property. However, we find this case distinguishable from *Davis,* supra, and more akin to *State v. Yarbrough*, 104 Ohio St.3d 1, 2004-Ohio-6087, 817N.E.2d 845, ¶ 83, because the evidence of appellant's involvement in the home invasion did not rest solely upon the accomplices' testimony. Other evidence of appellant's involvement existed and therefore the trial court's failure to give the accomplice jury instruction was not plain error.

{¶26} With regard to the testimony of Brittany Funk, we find no plain error. Appellant has not explained how Brittany Funk was an accomplice. She was not charged as a result of her involvement. Generally, "[a]t minimum, an accomplice must be someone who has been indicted for the crime of complicity." *State v. Smith,* 9th Dist. No. 25650, 2012–Ohio–794, ¶ 22. Otherwise, an accomplice instruction may become necessary only in certain "rare circumstances" where a person might have been an accomplice, but was never indicted, such as a situation in which he or she received immunity in exchange for his or her testimony. *Id.* Funk was never charged as an accomplice and received no special treatment for her cooperation and testimony. Funk testified she was unaware of any plans to rob the Orndorff home; and denied any involvement in the crime. Appellant has not shown Funk was actually an accomplice or that her status was such that this was one of the "rare circumstances" where an accomplice instruction was warranted. *See Id.*

{¶27} Funk was not indicted for complicity, nor was any evidence presented to show that she received any type of favorable treatment in exchange for testifying against appellant. Therefore, the trial court was not required to give the cautionary

instruction to the jury. *State v. Howard*, 5th Dist. No. 06CAA100075, 2007-Ohio-3669, ¶ 60.

{¶28} The trial court did not commit plain error in failing to give an accomplice instruction and appellant's first assignment of error is overruled.

II.

{¶29} In his second assignment of error, appellant argues his convictions for kidnapping and the second count of aggravated burglary should have merged for purposes of sentencing because they are allied offenses of similar import. We disagree.

{¶30} With respect to victims Larry and Becky Orndorff, appellant was indicted upon, convicted of, and sentenced upon one count each of kidnapping pursuant to R.C. 2905.01(A)(2). Appellant argues the trial court should have merged the second count of aggravated burglary pursuant to R.C. 2911.11(A)(2) (Count Four) for purposes of sentencing.

{¶31} R.C. 2941.25 states as follows:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed

separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶32} In *State v. Johnson*, the Ohio Supreme Court modified the test for determining whether offenses are allied offenses of similar import. 128 Ohio St.3d 1405, 2010–Ohio–6314. The Court directed us to look at the elements of the offenses in question and determine whether or not it is possible to commit one offense and commit the other with the same conduct. If the answer to such question is in the affirmative, the court must then determine whether or not the offenses were committed by the same conduct. If the answer to the above two questions is yes, then the offenses are allied offenses of similar import and will be merged. If, however, the court determines that commission of one offense will never result in the commission of the other, or if there is a separate animus for each offense, then the offenses will not merge according to *Johnson*, supra.

{¶33} Count Four, aggravated burglary pursuant to R.C. 2911.11(A)(2), states in pertinent part, "No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if * * * [t]he offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control." Appellant was also convicted of one count of kidnapping

pursuant to R.C. 2905.01(A)(2), which states, "No person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: [t]o facilitate the commission of any felony or flight thereafter."

{¶34} Under the facts of this case, the aggravated burglary was complete when appellant entered the house for the second time. Upon awakening the Orndorffs and subjecting them to prolonged restraint, and forcing Becky Orndorff into the garage at gunpoint, the offense of kidnapping was committed with a separate animus. The aggravated burglary offense is not an allied offense of kidnapping under these circumstances.

{¶35} Appellant's second assignment of error is overruled.

III.

{¶36} In his third assignment of error, appellant argues summarily his convictions are against the manifest weight and sufficiency of the evidence. We disagree.

{¶37} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would

convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶38} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶39} Appellant was convicted upon one count of aggravated burglary, one count of theft of firearms, and one count of theft in an amount greater than $1000 and less than $7500 related to the first entrance into the home on December 12, 2008. He was convicted of one count of aggravated burglary, one count of theft of firearms, one count of theft in an amount greater than $7500 and less than $150,000 and two counts of kidnapping for the return to the home in the early morning hours of December 13, 2008 and encounter with the Orndorffs.

{¶40} Appellee's evidence consisted of the testimony of the Orndorffs, who were not able to specifically identify appellant but did provide a link to him because he dated their granddaughter, had been in their home, and was aware they had ready

cash and firearms. Hutton, Barlow, and Funk detailed the events the night of the home invasion and appellant's involvement therein. DNA consistent with appellant was found on a metal bar under the deck of the residence, found with a radio removed from the Orndorffs' daughter's car. Appellant's girlfriend testified about his admissions to her. The cell phone evidence implicated Barlow and Hutton, which led to appellant.

{¶41} Appellant does not indicate which element of which offense appellee failed to present sufficient evidence of. Nor does he point to any evidence in the record that the jury lost its way. Appellant's convictions are not against the manifest weight or sufficiency of the evidence and appellant's third assignment of error is overruled.

IV.

{¶42} In his fourth assignment of error, appellant argues the common pleas court lacked jurisdiction to indict, convict, and sentence him. We disagree.

{¶43} It is undisputed appellant was age 17 at the time of the offense. Pursuant to R.C. 2152.10(A)(2)(b), appellant was subject to mandatory transfer. "A child who is alleged to be a delinquent child is eligible for mandatory transfer and shall be transferred as provided in section 2152.12 of the Revised Code in any of the following circumstances: The child is charged with a category two offense, other than a violation of section 2905.01 of the Revised Code, the child was sixteen years of age or older at the time of the commission of the act charged, and either or both of the following apply: The child is alleged to have had a firearm on or about the child's person or under the child's control while committing the act charged and to have displayed the firearm, brandished the firearm, indicated possession of the firearm, or

used the firearm to facilitate the commission of the act charged." Appellant was charged with a number of Category Two offenses pursuant to R.C. 2152.02(CC)(1), including aggravated burglary and kidnapping.

{¶44} Appellant argues, though, the juvenile court failed to consider amenability factors and failed to order a mental health evaluation. We find no authority for such requirement for mandatory transfers, nor does appellant offer any.

{¶45} Appellant also argues the juvenile complaint was improper because it does not state where the offense took place. It is well established, though, that failure to object or otherwise raise venue issues in a juvenile complaint waives the matter on appeal. See, e.g., *State v. Loucks*, 28 Ohio App.2d 77, 82, 274 N.E.2d 773 (4th Dist.1971).

{¶46} Appellant's fourth assignment of error is overruled.

V.

{¶47} In his fifth assignment of error, appellant argues Ohio's juvenile transfer statute violates the Sixth Amendment right to trial by jury as set forth in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). We disagree.

{¶48} In *Apprendi v. New Jersey*, the United State Supreme Court determined that other than the fact of a prior conviction, any fact which increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proven beyond a reasonable doubt. 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Appellant apparently argues Ohio's juvenile bindover procedure violates *Apprendi* because juvenile bindover proceedings should be held to a reasonable-doubt standard.

{¶49} We reject appellant's argument as a misunderstanding of Ohio criminal procedure. The juvenile bindover procedure is analogous to the adult preliminary hearing: both evaluate probable cause, neither is a determination of a defendant's guilty beyond a reasonable doubt. Appellee points out that Juv.R. 27(A) and R.C. 2151.35(A) require the juvenile division to determine cases without a jury, but this was a case of mandatory transfer to the (adult) Court of Common Pleas and the matter was, in fact, tried to a jury.

{¶50} Appellant's fifth assignment of error is overruled.

VI.

{¶51} In his sixth assignment of error, appellant argues his conviction must be reversed because bench conferences and other colloquy between counsel and the court was not recorded. We disagree.

{¶52} Appellant failed to object or ask that sidebar discussions be recorded and therefore waived the issue. *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 134. We will not reverse where an appellant failed to object and fails to demonstrate material prejudice. Id. Nothing in the record supports appellant's speculation the sidebar discussions dealt with matters relevant to appellate review. See, id.

{¶53} Appellant's sixth assignment of error is overruled.

VII.

{¶54} In his seventh assignment of error, appellant asserts he received ineffective assistance of trial counsel. We disagree.

{¶55} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See*, *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

{¶56} "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

{¶57} Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

{¶58} Appellant summarily asserts trial counsel made the following strategic errors: he failed to object to use of photographs of a shoe and to investigate shoe sizes of witnesses; he didn't effectively cross-examine the accomplices on their plea agreements or seek appropriate accomplice jury instructions, and finally he stipulated to the testimony of a forensic witness.

{¶59} Each of the decisions cited by appellant, with the exception of trial counsel's failure to seek accomplice jury instructions, constitutes a matter of trial strategy, for which we generally afford counsel a broad range of deference. Tactical or strategic trial decisions, even if ultimately unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995).

{¶60} Counsel's failure to seek an accomplice instruction was arguably ineffective under the first prong of *Strickland*, supra, but appellant has not even attempted to make an argument under the second prong, and therefore fails to show the result of the proceeding would have been different had an accomplice instruction been given. As we have stated infra, appellant's convictions were not against the manifest weight of the evidence. We are unable to find appellant suffered actual prejudice as a result of counsel's failure to seek an accomplice jury instruction.

{¶61} Appellant's seventh assignment of error is therefore overruled.

{¶62} Having overruled appellant's seven assignments of error, the judgment of the Muskingum County Court of Common Pleas is therefore affirmed.

By: Delaney, P.J.

Hoffman, J. and

Farmer, J. concur.

_____
HON. PATRICIA A. DELANEY


_____
HON. WILLIAM B. HOFFMAN


_____
HON. SHEILA G. FARMER


PAD:kgb

[Cite as *State v. Riley*, 2013-Ohio-1332.]

IN THE COURT OF APPEALS FOR MUSKINGUM COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| BLAKE A. RILEY | : | |
| | : | |
| | : | Case No. CT2012-0022 |
| Defendant-Appellant | : | |


For the reasons stated in our accompanying Opinion on file, the judgment of the Muskingum County Court of Common Pleas is affirmed.  Costs assessed to Appellant.


————————————————————
HON. PATRICIA A. DELANEY


————————————————————
HON. WILLIAM B. HOFFMAN


————————————————————
HON. SHEILA G. FARMER